UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

TODD LOWE, et al.,

    Plaintiffs,

v.

WASHOE COUNTY, et al.,

    Defendants.

Case No. 3:08-CV-00217-KJD-RAM

**ORDER**

    Currently before the Court is Defendants' Motion to Dismiss (#11), filed May 2, 2008. Plaintiffs filed an Opposition (#13), on May 19, 2008, to which Defendants filed a Reply (#16), on May 27, 2008.

**I. Background**

    This case is brought by Plaintiffs, real property owners and taxpayers in Washoe County, Nevada, seeking declaratory and injunctive relief, for themselves, and all other similarly situated residential real property taxpayers at Lake Tahoe in Washoe County. The Complaint alleges that the Washoe County Assessor has failed to follow regulations promulgated by the Nevada Tax Commission in the valuation of approximately 9,000 parcels of residential real property at LakeTahoe, Nevada, for the 2008-2009 tax year in violation of the Nevada and U.S. Constitutions,

the Nevada statutes governing ad valorem taxation, and the Nevada Supreme Court decision in <u>State ex rel State Board of Equalization v. Bakst</u>, 148 P.3d 717 (Nev. 2006).

Plaintiffs' Complaint seeks (1) a declaratory judgment stating that the Washoe County Assessor's 2008-2009 valuations of residential real property at Incline Village and Crystal Bay, in Lake Tahoe, Nevada are unconstitutional; and (2) preliminary and permanent injunctive relief, enjoining the Washoe County Treasurer from billing for and collecting taxes from the Plaintiffs for the 2008-2009 tax year based on the alleged unconstitutional valuations. Specifically, Plaintiffs allege that they have no "plain, simple, or efficient or otherwise adequate remedy" under State law for the violations they allege in their Complaint. (Pls.' Opposition at 9.)

Defendants, Washoe County, Josh Wilson (Washoe County Assessor), and Bill Berrum (Washoe County Treasurer) (referred to collectively as "Defendants") seek that the Court dismiss Plaintiffs' Action pursuant to Fed. R. Civ. P. 12(b)(1), alleging *inter alia* that the Court lacks subject matter jurisdiction. Specifically, Defendants disclaim jurisdiction pursuant to the Tax Injunction Act, 28 U.S.C. § 1341.

**II. Standard for Motion to Dismiss**

A jurisdictional attack pursuant to Fed. R. Civ. P. 12(b)(1) can be made in one of two ways. The motion can make a facial challenge, which asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction, or it can make a factual attack, which disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035 (9th Cir. 2004). In the latter case, the judge may consider outside evidence and resolve factual disputes. <u>Berardinelli v. Castle & Cooke, Inc.</u>, 587 F.2d 37, 39 (9th Cir.1978); <u>See also, Augustine v. United States</u>, 704 F.2d 1074, 1077 (9th Cir.1983) (holding that unlike a motion to dismiss for failure to state a claim, under Fed. R. Civ. P. 12(b)(6), a court can hear outside evidence regarding a motion to dismiss for lack of subject matter jurisdiction).

Here, Plaintiffs have averred the existence of federal jurisdiction pursuant to 43 U.S.C. §§ 1331 and 1343, as they bring their claims under 28 U.S.C. § 1983. Defendants' Motion to Dismiss presents a factual challenge disclaiming subject matter jurisdiction pursuant to Tax Injunction Act. Therefore, there is no presumption of truthfulness of the Plaintiffs' allegation, and the burden is on the Plaintiffs to establish this Court's jurisdiction. See Jacobson v. ex rel. U.S. Postal Service, 276 F. Supp.2d 1106 (D. Nev. 2003).

**II. Analysis**

    **A.  The Tax Injunction Act**

Defendants disclaim subject matter jurisdiction under the Tax Injunction Act, which they argue bars federal jurisdiction over Plaintiffs' claims. The Tax Injunction Act provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under the state law where a plain, speedy and efficient remedy may be had in the courts of such state.

28 U.S.C. § 1341. The United States Supreme Court has held that the Tax Injunction Act "shields state tax collections from federal-court restraints," and "was designed expressly to restrict the jurisdiction of the district courts of the United Sates over suits relating to the collection of State taxes." Hibbs v. Winn, 542 U.S. 88, 104 (2004). The Tax Injunction Act applies to actions brought for both declaratory as well as injunctive relief. See, e.g., Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293 (1943).

In reference to the underlying purpose of the Tax Injunction Act, and its proscription of federal jurisdiction, the Supreme Court has noted that "principles of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration. . . . 'It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible.'" National Private Truck Council, Inc. v. Oklahoma Tax Com'n, 515 U.S. 582, 586 (1995) (quoting Dows v. Chicago, 11 Wall. 108, 110, 20

1  L.Ed. 65 (1871)).  The Court went further to note that the Tax Injunction Act is one manifestation of
2  Congress and the federal judiciary's aversion to federal interference with state tax administration.  Id.
3  at 586.  Other courts have noted the underlying purpose of the Tax Injunction Act, stating,
4  "[p]roperty taxation is a subject which is best left to the states to perform in their own ways. . . . the
5  notion of 'comity', so strongly reinforced by the Supreme Court in Younger v. Harris, 401 U.S. 37
6  (1971), is equally applicable in [cases seeking relief from state tax assessments] . . . a proper respect
7  for state functions, a recognition of the fact that the entire country is made up of a Union of separate
8  state governments, and a continuance of the belief that the National Government will fare best if the
9  States and their institutions are left free to perform their separate functions in their separate ways.  Id.
10 at 44."  Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 478 F.Supp 1231, 1234 (D.C. Mo.
11 1979).
12         Here, Plaintiffs do not disclaim the Tax Injunction Act's prohibition of federal court
13 jurisdiction in instances where state law has established a plain, speedy, and efficient system of
14 resolving tax disputes; rather Defendants aver that Nevada's statutory scheme for resolving tax
15 disputes does not meet the standard set forth in the Tax Injunction Act.  The Court disagrees.
16         **B. Nevada's Statutory Tax Scheme**
17         Section 1(1) of Article 10 of the Nevada Constitution requires that the Nevada Legislature
18 "provide by law for a uniform and equal rate of assessment and taxation" of real and personal
19 property throughout the state, and "prescribe such regulations as shall secure a just valuation for the
20 taxation of all property. . . ."
21         Following this mandate, the Nevada legislature has provided an extensive administrative
22 process for taxpayers who disagree with the valuation of their property in NRS Chapter 361.
23 Specifically, NRS §§ 361.355, 361.356, and 361.357 provide a process by which a dissatisfied
24 taxpayer may contest or appeal his property valuation.  According to the administrative regulations
25 found in NRS Chapter 361 (hereinafter referred to as "administrative tax regulations"), an individual
26 wishing to contend their property valuation may bring an appeal to a county board of equalization.

Following its receipt of an appeal or protest, the county board of equalization provides the taxpayer with a hearing during its session—which usually runs annually from January 15 through February 28. NRS 361.340(11). At the hearing, the taxpayer must provide proof, by a preponderance of the evidence, that he/she is entitled to a reduction in his/her property assessment. NRS 361.345(1). If the taxpayer is not satisfied or disagrees with the outcome of the hearing before the county board of equalization, the law provides additional remedies.

The second level of the appeal process provides that the taxpayer may file an appeal of the county board of equalization decision to the Nevada State Board of Equalization pursuant to NRS 631.360. NRS 361.360 provides in pertinent part:

> Any taxpayer aggrieved at the action of the county board of equalization in equalizing, or failing to equalize the value of his property, or property of others . . . may file an appeal with the State Board of Equalization on or before March 10 and present to the State Board of Equalization the matters complained of . . . .

After the Nevada State Board of Equalization has rendered a final determination, that determination is then subject to judicial review in an appropriate state district court. Once the appeal is decided by the appropriate state district court, the taxpayer may obtain review of that judgment by appeal to the State Supreme Court. NRS 233B.150.

Here, rather than seeking relief pursuant to the administrative regulations set forth in NRS Chapter 361, Plaintiffs seek relief in this federal forum pursuant to 42 U.S.C. § 1983, alleging that Nevada's administrative regulations do not provide a plain, speedy, efficient, or otherwise adequate remedy under the law.

***1. Plain, Speedy, Efficient or Otherwise Adequate Remedy***

Plaintiffs' Complaint sets forth a lengthy and detailed account of the their proceedings, and the proceedings of various real property owners in Lake Tahoe (Incline Village and Crystal Bay), before the Washoe County Board of Equalization, State Board of Equalization, Washoe State District Court, and the Nevada Supreme Court seeking relief from the valuation assessments and methodologies used by the Washoe County Assessor on their properties, between the years of

2003–2009.  Plaintiffs refer the Court to this history, as evidence that the administrative process set forth in NRS Chapter 361 does not provide a plain, speedy, efficient or otherwise adequate remedy.  In its Opposition to Defendants' Motion to Dismiss, Plaintiffs raise three arguments to demonstrate that NRS Chapter 361 is not a sufficient remedy to bar federal jurisdiction under the Tax Injunction Act.  Specifically, Plaintiffs aver that Nevada's administrative regulations do not allow for remedies on a classwide basis; that the timing of tax assessments require the filing of multiple suits; and that the administrative regulations under NRS Chapter 361 fail to ensure a fair and full hearing under the law, because the state board of equalization is adversarial.

The Court has examined the full record in this case, including the extensive history Plaintiffs provide regarding their battle for relief from the Washoe County Assessor's valuation assessments and methodologies.  While the Court is sympathetic to Plaintiffs' plight in protesting the valuation assessments for their properties, this is not the correct venue for the relief Plaintiffs seek.  Ironically, the procedural history of Plaintiffs' protests demonstrates that the administrative regulations promulgated under NRS Chapter 361 provide exactly the redress for which this Court's jurisdiction is prohibited under the Tax Injunction Act—that is, a speedy, efficient, and adequate remedy under the law.

Rather than recounting the voluminous procedural history as set forth in Plaintiffs' Complaint, and recounted in part in their Opposition, the Court points out that those individuals who have sought relief through the avenues proscribed in the administrative regulations, have received redress in some form.

Without exhausting the record of proceedings Plaintiffs have undertaken since 2003, the Court notes various examples which demonstrate that the State's administrative tax regulations are efficient and adequate.  In January 2003, taxpayers from Incline Village and Crystal Bay ("taxpayers") filed petitions with the Washoe County Board of Equalization challenging the Washoe County Assessor's methodologies and resulting valuations and assessments for the 2003-2004 tax year. (Compl. ¶ 26.)  The petitions were denied.  In March of 2003, the taxpayers filed appeals of the

6

Washoe County Board of Equalization decisions to the State Board of Equalization. The State Board of Equalization, sitting in its 2003 term, denied all of the taxpayer appeals. (Compl. ¶ 27.) In October 2003, some of the taxpayers filed petitions for judicial review with the First Judicial District Court in Carson City, asking that the decisions of the State Board of Equalization be reversed. (Compl. ¶ 28.)

In January, 2006, the District Court reversed the decision of the State Board of Equalization, set aside the 2003-2004 valuations and the 2003-2004 tax assessments based on those valuations as void, and returned the land portion value of the taxpayers' residential real property to their 2002-2003 levels, and ordered refunds to the 17 taxpayers who had persisted in the pursuit of judicial relief. (Compl. ¶ 38.) As a result of the District Court decision, the Washoe County board of Equalization began setting aside the 2006-2007 valuations made by the Washoe County Assessor. At that point, Washoe County filed an appeal of the District Court's decision with the Nevada Supreme Court, and the Nevada Supreme Court issued a partial stay, directing the Washoe County Board of Equalization to follow the rationale of the District Court in determining any challenges brought before it to the 2006–2007 valuations, but staying any implementation by the Board of its decisions. (Compl. ¶ 39.)

In December, 2006, the Nevada Supreme Court issued its decision on the taxpayers' original challenge to the 2003-2004 valuations, affirming the decision of the District Court. (Compl. ¶ 46.) The Supreme Court held that the Assessor could not use "standards or methods of valuation not approved by the Nevada Tax Commission," that the Assessor's use of unapproved methodologies "was improper under the Nevada Constitution's requirement that property be taxed according to a uniform and equal rate of assessment", that "the 2003-2004 valuations which were based on those methodologies [were] . . unjust and inequitable," that "[a]ny taxes collected that can be attributed to those invalid methodologies are unconstitutional," and that "the Taxpayers who paid such taxes are entitled to a refund." (Compl. ¶ 46); State ex rel. State Bd. of Equalization v. Bakst, 122 Nev. At 719.

1   When the Supreme Court's decision in Bakst became final, the partial stay upon the County Board of Equalization was lifted and the Washoe County tax rolls for 2006-2007 were conformed to the Washoe County Board of Equalization decision returning the land portion of the valuation of all residential real property to 2002-2003 levels.  Additionally, in February 2007, the Washoe County Board of Equalization met to hear approximately 900 individual taxpayer challenges to the Assessor's 2007-2008 valuations.  Pursuant to the Nevada Supreme Court's decision in Bakst, the County Board of Equalization set aside the County Assessor's valuations, and set the value of the land portion of the properties at their 2006-2007 levels—as corrected by the Assessor to 2002-2003 levels. (Compl. ¶ 49.)   The Washoe County Assessor appealed the County Board of Equalizations's decisions to the State Board of Equalization in favor of the approximately 900 taxpayers.  (Id.)  For most of the Assessor's appeals regarding taxpayer petitions for the 2006-2007 tax year, the State Board of Equalization approved a compromise valuation proposed by the assessor, and agreed to by approximately 200 individual taxpayers. (Compl. ¶ 53.) The remaining appeals were reversed by the State Board of Equalization, and some of the taxpayers filed a petition for judicial review in the Carson City District Court.  (Id.)

   Additionally, at the end of its 2006 term, after hearing all of the individual taxpayer petitions that had been filed, the Washoe County Board of Equalization, on its own motion and acting pursuant to the mandate of NAC 361.624 that it equalize property values within a geographic area, voted unanimously to roll back the land portion of the valuation of all remaining residential real property at Incline Village and Crystal Bay to 2002-2003 levels.  (Compl. ¶ 41.)   The rollback however, was not implemented by any change in the Washoe County 2006-2007 tax roll, and the Washoe County Treasurer thus prepared and sent tax bills based on the Assessor's 2006-2007 valuations. (Compl. ¶ 41–42.)  Subsequently, the 2007 State Board of Equalization entered an order remanding the area-wide equalization rollback to the county board.  That order was stayed pending review by extraordinary writ in the Nevada Supreme Court.  (Compl. ¶ 54.)

1       In addition to the taxpayers who protested the 2003-2004 valuations, because the real property taxes are assessed annually but reappraised for ad valorem tax purposes on a five-year cycle, taxpayers wishing to protest their tax valuation between reappraisals, filed challenges during the intervening years.[1]  Thus, in January 2004, taxpayers filed protests to the Assessors 2004-2005 methodologies with the County Board fo Equalization. (Compl. ¶ 31.)  As with the 2003-2004 protests, the County Board rejected the challenges, and the taxpayers brought appeals before the State Board of Equalization, which also denied relief.  (Id.)  As with the 2003-2004 challenges, the taxpayers brought petitions for judicial review in the Carson City District Court seeking an order reversing the State Board of Equalization's determination.  (Id.)  In May 2006, the state District Court, found that the 2003-2004 and 2004-2005 cases were identical, and acknowledging its prior decision for the 2003-2004 year, reversed the decision of the State Board of Equalization, set aside the 2004-2005 valuations and the tax assessments based on those valuations, returned the land portion value of the taxpayers' residential real property to their 2002-2003 levels, and directed that refunds be paid to the approximately 37 taxpayers who pursued judicial relief.  (Compl. ¶ 44.)

Additionally, during the period in which taxpayers were protesting the assessment methodologies of the Washoe County Assessor, the State Tax Commission and the Nevada Legislature made regulatory amendments and changes that were reflective of the issues presented by the taxpayers of Incline Village and Crystal Bay.  Specifically, in August 2004, the Tax Commission, after holding more than 30 public workshops, amended its regulations with particular attention to determining the value of land in the absence of sufficient comparable vacant land sales. (Compl. ¶ 32.)  Moreover, in May 2005, the Nevada Legislature amended the tax statutes to clarify the duty and obligation of the Nevada Tax Commission to adopt "general and uniform regulations governing

---

[1] Under Nevada law, each county assessor is required to determine the taxable value of all real property within each respective county each year.  The law however, does not require that all real property be appraised or reappraised every year.  Therefore, some counties, including Washoe County reappraise properties for ad valorem tax purposes on a five-year cycle.  The Washoe County Assessor divides the County into five areas, and reappraises one of the five areas every year. (Compl. ¶ 21.)

9

the assessment of property by the county assessors of the various counties, county boards of equalization, the State Board of Equalization and the department" and the duty and obligation of the county assessor as well as the County and State Boards of Equalization to follow Tax Commission regulations.  (Compl. ¶ 36); NRS 360.250(1); NRS 361.260(7); NRS 361.340(10); and NRS 361.375(10).

Nevada's administrative tax regulations provide an effective and adequate means in which a dissatisfied taxpayer may contest or appeal his property valuation.  A review of the record in this case does not present the Court with circumstances or evidence permitting the preemption of the Tax Injunction Act's jurisdictional proscription, or federal subject matter jurisdiction.[2]

**C. 2008-2009 Tax Year.**

As stated above, Plaintiffs' Complaint seeks relief for the County Assessor's valuations made for the 2008-2009 reappraisal.  According to Plaintiffs, in spite of the Nevada Supreme Court's ruling in Bakst which held that the County Assessor may not "select appraisal methods that have not been expressly approved in regulations adopted by the Nevada State Tax Commission," the Tax Commission has promulgated no additional or amended regulations, and the County Assessor "again adopted his own methodologies—including methodologies expressly rejected by the Bakst court—as well as entirely new methodologies, none of which were 'expressly approved in regulations adopted by the Nevada Tax Commission.'" (Compl. ¶ 59); State ex rel State Board of Equalization v. Bask, 148 P.3d at 722 n.13.

Plaintiffs' Complaint gives a detailed account of the methodologies utilized by the County Assessor in the 2008-2009 reappraisal and valuation of the land portion of residential real property at

---

[2]Particularly, the Court is not persuaded by Plaintiffs' argument that the State's administrative regulations are inefficient because relief is not available on a large-scale, or class-like basis.  That such a remedy is available is evidenced by the Washoe County Board of Equalization's action in 2006 to equalize property values within the entire geographic area pursuant to NAC § 361.624.  Specifically, NAC § 361.624 provides that, "[t]he county board of equalization shall seek to equalize taxable valuation within the geographic vicinity of the subject property, as well as the whole county."  Additionally, the State Board of Equalization's Order remanding the County Board's 2006 area-wide equalization rollback was stayed pending review by extraordinary writ in the Nevada Supreme Court.  (Compl. ¶ 54.)

1  Incline Village and Crystal Bay in attempt to demonstrate that the methodologies are "wholly
2  unauthorized by any Tax Commission regulation," and "prohibited by the Nevada statutes which
3  govern the Tax Commission."  (Compl. ¶ 61.)

4      As noted above however, the Court finds that Nevada law, and expressly, NRS Chapter 361
5  provides a speedy, efficient, and adequate remedy for an individual wishing to contend their property
6  valuation.  The procedural record in ths case demonstrates that those individuals who have sought
7  relief have been afforded adequate redress under the law.  Because such a remedy is provided under
8  Nevada law, this Court lacks subject matter jurisdiction over Plaintiffs' claims regarding the 2008-
9  2009 valuations.  Additionally, the Court recognizes the insightful decision of the Nevada Supreme
10 Court holding the 2003-2004 valuations to be unconstitutional, and respectfully believes that
11 Plaintiffs will receive proper relief, if any, in regard to the 2008-2009 valuations by utilizing the
12 venues available to them under Nevada law—and that have demonstrably been utilized by Plaintiffs
13 and other taxpayers to this point.

**IV. Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (#11), is **GRANTED**.

DATED this 24th day of March 2009.

_____
Kent J. Dawson
United States District Judge